' M. M. THOMPSON ET AL.

v.

J. F. DUFF.

</div>

FRAUDULENT SALE.—If the purchaser from a fraudulent vendor buys with notice of the fraudulent intent of his vendor, he stands in his vendor's shoes and notice may be inferred from the existence of certain facts and circumstances that would place a man of ordinary prudence on inquiry with reference to the conduct of his vendor. The jury properly found from the evidence in this case that a pretended sale was made with a purpose to defraud the original vendor.

APPEAL from the Circuit Court of Jackson county; the Hon. OLIVER A. HARKER, Judge, presiding. Opinion filed June 12, 1886.

Mr. WM. J. ALLEN, for appellants.

Mr. W. W. BARR, for appellee.

GREEN, J. Appellants brought replevin in the Circuit Court of Jackson county against appellee to recover steam engine, boiler, sawmill, tools, etc., and upon the trial a verdict and judgment for appellee was rendered from which appellants took this appeal. We think the instructions given for the defendant below were right and those requested by the plaintiffs and refused were properly refused, leaving only this question for us to determine: was the verdict of the jury justified by the evidence, and the judgment thereon right? Although there was a conflict in the evidence the jury were satisfied doubtless from all of it that the property in controversy had been sold by the Mansfield Machine Works of Ohio to J. A. Woods, Wm. C. Woods and James H. Vaughn, by written contract, for $2,280, payable partly in cash, balance to be in installments secured by notes and chattel mortgage on engine, boiler and equipments, with the further conditions that no verbal contract different from the written terms could be made for or on behalf of vendor ; and also providing for the title and right of possession remaining in vendor until payment had been made. This contract is omitted in the abstract but appears in the record. The vendees did not make the cash payment or give notes and mortgage as agreed, but received the property from the agent of the vendor; and it is not claimed any payment was ever made except a jack valued at $200, delivered by Wm. C. Woods to Bennett, an agent of vendor, and an overpayment of $30 on freight, made by Woods to Bennett, which amount of $230 Woods testifies was to be applied on said cash payment. But aside from the clause forbidding any change in the terms of the contract Bennett denies such application was made. Appellant Thompson claims one half interest in the property by his purchase from Wm. C. Woods of such one half for $600, estimated by Thompson to be the amount of damage he had sustained by delay and lumber badly sawed for him at the mill by the Woods. He says he also let Woods have $20 and some poplar lumber Wm. C. Woods testifies he sold to Thompson but does

not state at what price, or how it was paid him. Appellant Lipe claims the remaining half interest in this property and testifies he bought it of Wm. C. Woods August 10th—does not state the year—for $500, and gave Woods his note due in two years therefor; that he was the brother-in-law of Woods; owned no property liable to execution and had paid nothing on his note. Wm. C. Woods denied executing said written contract and testified he was the sole owner of the property at the time he sold to Thompson. And James H. Vaughn testified at the trial he still owned all the interest he had ever had in said property as vendee under the contract referred to and had never paid anything for it. Appellee Duff (as appears by the record but not in abstract) testified he bought said property from Pany, agent of the Machine Co., August 8, 1882, for $1,975, paid $800 cash, gave his notes for balance, and had paid one of those notes, $300. The agent also testified to this sale. The *bona fides* of the transaction between the appellants and Wm. C. Woods, relied upon to establish their title and right to the possession of this property, is the pivotal point in this case and this was a question of fact to be determined by the jury. So far as Lipe is concerned it does not appear he bought prior to the purchase by Duff; he gave nothing but the note of an insolvent maker, never took possession of or asserted any claim as owner of said property until the trial; and the circumstances surrounding the transaction sufficiently advised him of the fraudulent purpose of this pretended sale to him. The mere acceptance of a transfer of property without a valuable consideration has been held to be of itself a sufficient evidence of a participation in the debtor's fraudulent intent. Bump on Fraudulent Con., 2d Ed., p. 197. As to appellant Thompson, in addition to his testimony before adverted to, other admissions in his testimony might well have induced the jury upon his testimony alone to doubt the fairness of his transaction with Wm. C. Woods. He says he bought on August 8, 1883, and knew as early as April of that year, these vendees of the Machine Co. had not complied with the terms of their contract, and that the vendor insisted on its right, by reason of such default, to retake the property; the

mode, amount and kind of payment he claimed to have made, his admissions that he had heard about the conditions of said contract before he bought, knew of the defau't of vendees to make payment thereon and did not care what the company claimed, and did not try to find out, all tend to show he is not a *bona fide* purchaser. With the notice he had he took the title of Wm. C. Woods as it was and no better. From all the evidence the jury properly found that appellants' claim of ownership and right of possession of this property, acquired in good faith and for a valuable consideration, was not proven, but that the proof showed a pretended sale with a purpose to defraud the original vendor by putting the property out of its reach, participated in by the appellants and Wm. C. Woods. Such a transaction with such a purpose is a fraud the law will not countenance. "If the purchaser from a fraudulent vendor buys with notice of the fraudulent intent of his vendor, he stands in his vendor's shoes, and notice may be inferred from the existence of certain facts and circumstances that would place a man of ordinary prudence on inquiry with reference to the conduct of his vendor." Cowling v. Estes, 15 Bradwell, 260 ; Bump on Fraudulent Con., 2d Ed., 200. In Grad'e v. Kern, 109 Ill. 563, where, as in this case, the evidence tended to show the sale was pretended, not real, but a device to put goods out of the reach of vendor's partners, and vendee was a party to the scheme, he acquired no title to the goods, and a subsequent sale by the other partners on behalf of the firm passed a valid title to the subsequent vendee. In the case of Van Duzor v. Allen, 90 Ill. 500, a threshing machine was in controversy, and the purchaser failed to give notes and mortgage to secure payments as agreed, and vendee got possession of and used the machine, and vendor knew this fact; yet as between vendor and purchaser the trade was not so far executed as to pass title to the latter. The fact then having been found by the jury fairly, as we think, from the evidence, that the transactions between appellants and Wm. C. Woods were pretended sales, merely coupled with a fraudulent purpose, participated in by appellants, to put the property out of the reach of the original vendor, the rules of law applicable to

such facts necessarily defeats the recovery of the property by appellants. And no error appearing requiring the reversal of the judgment appealed from, it is affirmed.

Judgment affirmed.