Williams, J., of the Sixth Appellate District, sitting in place of Kunkle, J., of the Second Appellate District.

The Second National Bank of Hamilton *v.* The Ohio Contract Purchase Co. et al.

94

(Decided November 14, 1927.)

*Messrs. Williams, Sohngen, Fitton & Beeler,* for plaintiff in error.

*Messrs. White, Cannon & Spieth* and *Messrs. Shotts & Millikin,* for defendants in error.

HAMILTON, P. J.   Defendant in error, the Ohio Contract Purchase Company, brought this action in replevin in the court of common pleas of Butler county, Ohio, against the plaintiff in error, for the possession of 28 Maytag washing machines.

On the trial, the court found the defendant in

error here entitled to the immediate possession of the washing machines, and so rendered its judgment. From that judgment, error is prosecuted to this court.

It appears from the record that one George L. Grove owned and operated a store in the city of Hamilton, Ohio, under the name of the Miami Electric Company, and handled for sale Maytag Washing Machines. Some time prior to May 6, 1926, the Miami Electric Company, by George L. Grove, gave an order to the Ohio Contract Purchase Company for a carload of Maytag Washing Machines, 85 in number, under a conditional sales contract. The purchase price of these machines was $8,365.96. Shipment was made by the Contract Company, and to the bill of lading was attached a draft for $1,973.11, and the cognovit note of the Miami Electric Company, payable to the order of the Ohio Contract Purchase Company, for $6,392.85, and the conditional sales contract, to be executed by the Miami Electric Company before delivery of the machines. The machines in dispute here were part of this shipment.

It appears that on the 6th day of May, 1926, the Miami Electric Company, by George L. Grove, borrowed from the Second National Bank of Hamilton, Ohio, the sum of $1,900, and executed its promissory note, and in the note pledged "warehouse receipt for twenty-eight Maytag Washers." Using the avails of the note, Grove went to the First National Bank & Trust Company of Hamilton, Ohio, paid the draft attached to the bill of lading, in the sum of $1,973.11, executed a cognovit note, and signed the conditional

sales contract covering the whole shipment of washing machines. He thereupon received the bill of lading and took possession of the 85 washing machines, and delivered possession of 28 of the same, by way of nonnegotiable warehouse receipt, to the Second National Bank, plaintiff in error here.

The conditional sales contract, upon its execution, was mailed to the Ohio Contract Purchase Company, which prepared the same for filing and mailed it to the recorder of Butler county, Ohio, and it was filed four days after its execution, Saturday and Sunday intervening.

The warehouse receipt for the 28 washers was delivered to the Second National Bank prior to the filing of the conditional sales contract. Subsequently, the 28 machines were replevined by the Ohio Contract Purchase Company from the Second National Bank and the Warehouse Company, resulting, as above stated, in the Contract Company securing possession of the 28 machines.

The controversy therefore arises from the fact that the Second National Bank, plaintiff in error, received the nonnegotiable warehouse receipt for the 28 machines prior to the actual filing with the recorder of the conditional sales contract.

Three specifications of error are stressed:

(1) Error in the admission of certain evidence.

(2) The overruling by the lower court of the plaintiff in error's demurrer to the evidence, at the close of the testimony.

(3) Judgment of the court of common pleas contrary to law, and the overruling of the motion for a new trial.

The specifications of error will not be discussed in

order, for the reason that each and all of them involve practically the same propositions of law.

The questions here are determined by the construction of Section 8568, General Code of Ohio, and the facts as controlled by this section. Section 8568 is as follows:

"When personal property is sold to a person to be paid for in whole or [in] part in installments, or is leased, rented, hired or delivered to another on condition that it will belong to the person purchasing, leasing, renting, hiring, or receiving it, when the amount paid is a certain sum, or the value of the property, the title to it to remain in the vendor, lessor, renter, hirer or deliverer thereof, until such sum or the value of the property or any part thereof has been paid, such condition, in regard to the title so remaining until payment, shall be void as to all subsequent purchasers and mortgagees in good faith and for value, and creditors unless the conditions are evidenced by writing, signed by the purchaser, lessee, renter, hirer or receiver thereof, and also a statement thereon, under oath, made by the person so selling, leasing or delivering the property, his agent or attorney, of the amount of the claim, or a true copy thereof, with an affidavit that it is a copy, be deposited with the county recorder of the county where the person signing the instrument resides at the time of its execution, if a resident of the state, and if not such resident, then with the county recorder of the county in which the property is situated at the time of the execution of the instrument."

The first question that presents itself is: Was the plaintiff in error, the Second National Bank, such a creditor as is entitled to the protection of Section

8568? The bank became a creditor prior to the execution of the conditional sales contract, and became such prior to the securing of possession and title by the Miami Electric Company. At the time of securing the loan from the bank, which is the basis of the claim here, the Miami Electric Company had no right or title to the property. If Section 8568 has reference to subsequent creditors, then the bank is not entitled to the protection of Section 8568.

It is argued in the brief for the Contract Company that the word "creditors," used in the section, has reference only to lien creditors—that is, such as had in the interim secured liens by attachment, execution, or otherwise.

In the case of *York Mfg. Co.* v. *Cassell,* the United States Supreme Court, in a case which arose in Ohio, reported in 201 U. S., 344, 26 S. Ct., 481, 50 L. Ed., 782, held that an unrecorded conditional sale contract was good as against a trustee in bankruptcy of the conditional vendee, for the reason that the adjudication in bankruptcy did not operate as a lien upon the machinery in favor of the trustee, and that the trustee got no better title than his bankrupt had, and held that under the Ohio law a chattel mortgage was not void for lack of filing as between the parties thereto, and that the statute only voided the instrument as to those creditors who, between the time of the execution of the mortgage and the filing thereof, had taken steps to fasten upon the property for the payment of their debts.

The same was decided by the United States Circuit Court of Appeals in the case of *Foerstner* v. *Citizens' Sav. & Tr. Co.,* reported in 186 F., 1, which was also an Ohio case, and involved the construction

of Sections 8560 and 8568, General Code. These cases would seem to establish a proper construction of Section 8568 to be that the word "creditors," used in the statute, means lien creditors. It would follow that the Miami Electric Company, under these decisions, by its voluntary transfer of the warehouse receipt for the 28 washers in question, could convey no better title than it had. Not having in the interim secured any lien, could the bank be protected by the statute as a subsequent creditor?

It is settled law that the statute does not protect prior creditors. It has also been held that creditors becoming such prior to the date of the delivery of property, under the conditional sales act, are prior creditors. *In re Gosch,* (C. C. A.), 126 F., 627.

Under the facts, the bank became a prior creditor, it having made the loan and become such creditor prior to the delivery of the machines to the Miami Electric Company, the bank's debtor.

It is further argued that the bank had become a purchaser of the machines in question in good faith and for value. If it was such, then it is within the protection of the section. The evidence does not support the bank in this contention. It is in the evidence that the bank, plaintiff in error here, was familiar with the method of Grove in the financing of these transactions. It had aided him on several occasions in the past in transactions which involved the same procedure. It had loaned him money to take care of the draft attached to the bill of lading in the purchase of machines, and was familiar with the fact that conditional sales contract was necessary to secure title to the property. The bank which held the draft in the conditional sales contract was in the

same city. All bear on the question of good faith and notice.

The case of *Cooper* v. *Koppes,* 45 Ohio St., 625, at page 630, 15 N. E., 662, 664, holds:

"The penalty which the statute has denounced against every unfiled mortgage, or conveyance intended to operate as a mortgage, of chattels, unaccompanied by immediate delivery, and followed by continued change of possession, is that it shall be absolutely void as against creditors and *bona fide* purchasers and mortgagees."

In the case of *Thompson* v. *Duff,* 19 Ill. App., 75, it was held that, where a pretended sale by the conditional buyer for the purpose of defrauding the original seller was shown, that if such transferee from the fraudulent purchaser bought with notice of the fraudulent intent of his vendor, he stands in his vendee's shoes. It was held further that such notice will be inferred from the surrounding facts and circumstances that would have placed a man of ordinary prudence on inquiry with reference to the contract of his vendor.

In Estrich on Installment Sales, p. 175, the author says:

"In changing the rule as it formerly existed in Illinois the Supreme Court of that state relies on the provision of the Uniform Sales Act to the effect that 'subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.' "

Applying these rules, which, to us, seem sound, the bank was not a *bona fide* purchaser. Evidence of these prior transactions with the bank, involving the same routine of financing the purchase of these washers by the Miami Electric Company, was objected to, and its admission is one of the errors claimed here. The evidence was properly admitted as bearing on the question of good faith and notice as a subsequent purchaser. Moreover, we are of opinion that the bank is not a purchaser in any sense, but is no more than a pledgee. It is stated in the note given to the bank, which is an exhibit in this case, "I hereby pledge as collateral security for the payment of the note, warehouse receipt for twenty-eight washers," etc. We therefore have the situation that at the time of negotiating the loan with the bank, the Miami Electric Company, if in the note it had reference to the washers in question, sought to pledge property that it did not own and had no title to. The bank could secure no better title, under the pledge, than the Miami Electric Company had at that time.

Our conclusion is that the bank, under the facts of the case, secured no better title to the property in question than the conditional sales vendee, and is not protected by Section 8568, General Code, as against the unfiled conditional sales contract.

In this view of the case, it is not necessary to determine whether or not the conditional sales vendor is entitled to reasonable time in which to record its conditional sales contract.

The trial court held that the plaintiff below, defendant in error here, was entitled to the immediate possession of the property in question, and it was

justified under the evidence and the law in so holding.

*Judgment affirmed.*

MILLS and CUSHING, JJ., concur.